UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIMON ORTIZ VARGAS,<br>Petitioner,<br>v.<br>DAVID JENNINGS, et al.,<br>Respondents. | Case No. 20-cv-5785-PJH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE** |

Before the court is the represented motion for a temporary restraining order ("TRO") filed by petitioner Simon Ortiz Vargas in the above-captioned matter. Opposition to the TRO motion was filed by respondents David Jennings, San Francisco Field Office Director, U.S. Immigration and Customs Enforcement; Matthew T. Albence, Deputy Director and Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security; and William P. Barr, Attorney General of the United States. Petitioner filed a reply brief on August 21, 2020. The matter is fully briefed and the court determines that the matter is suitable for decision without oral argument. For the reasons set forth below, petitioner's motion for temporary restraining order is GRANTED IN PART with respect to enjoining respondents from re-detaining petitioner unless and until he is afforded a hearing on the question of whether his re-detention would ultimately be lawful. To the extent that petitioner's TRO motion seeks a judicial pre-deprivation hearing, the motion for TRO is DENIED IN PART.

## I.  BACKGROUND

The following factual summary is taken from the allegations of the habeas petition and supporting declarations and from the papers filed in support of and in opposition to the instant motion for TRO.

Petitioner is a 42-year-old non-citizen from Mexico who is married and the father of four children.  In 2010, he pled guilty to a misdemeanor violation of California Penal Code Section 273.5(a) in Fresno County Superior Court case number F10500202.  See dkt. 5-2 (Kosmo Decl.) at 67 (Minute Order) ¶¶ 14-15.  At that time, he signed a Misdemeanor Plea Form indicating that he "inflicted injury on wife."  Id. at 64.  The state court suspended imposition of sentence and imposed three years of probation with the condition that petitioner would serve 360 days in county jail, "all suspended except 40 days" time served.  Id. at 67 ¶¶ 22-23.

On August 6, 2019, the state court found that petitioner had violated his probation in connection with his California Penal Code § 273.5(a) conviction.  Dkt. 5-2 at 71–72.  The court sentenced petitioner to "[s]erve 90 Days at Fresno County Jail as to count(s) – 1. Corporal Injury – on Spouse/Cohabitant."  Id. at 72.  In late August 2019, Petitioner was taken into immigration custody directly from the Fresno County Jail after serving his sentence in case number F10500202.  Dkt. 5-2 at 12.  Petitioner was detained at the Mesa Verde facility from late August 2019 to December 2019.  Id.  While in ICE custody and awaiting a bond hearing, Mr. Ortiz fell gravely ill and was hospitalized with hyperosmolar nonketotic hyperglycemia and diabetic ketoacidosis, life-threatening conditions resulting from untreated and severely uncontrolled diabetes.  Dkt. 5-3 (Kosmo Decl.) at 3, 113, 119.  He spent four days in an intensive care unit and was told that he fell into a diabetic coma.

On December 6, 2019, the immigration judge ("IJ") conducted a bond hearing and ordered that petitioner be released if he paid a $10,000 bond.  In doing so, she found that petitioner was not subject to the INA's mandatory detention provisions at Section 236(c), 8 U.S.C. § 1226(c), but rather Section 236(a), 8 U.S.C. § 1226(a), and that she therefore

1  had the authority to grant petitioner release on bond.  On December 23, 2019,
2  Petitioner's bond was posted, and he was released on bond.  Dkt. 5-2 at 12, 46.  On
3  January 29, 2020, the IJ issued, sua sponte, an order reconsidering the prior bond
4  decision and revoking bond based on the finding that petitioner's conviction under Penal
5  Code § 273.5 constituted a crime involving moral turpitude and that he was therefore
6  subject to mandatory custody under INA § 236(c).  Dkt. 5-3 at 198-203.  On February 27,
7  2020, petitioner filed a notice of appeal to the Board of Immigration Appeals ("BIA") from
8  the IJ's January 29, 2020, decision.  The appeal before the BIA remains pending.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 65 provides federal courts with the authority to issue temporary restraining orders and preliminary injunctions.  Fed. R. Civ. P. 65(a), (b).  Generally, the purpose of a preliminary injunction is to preserve the status quo and the rights of the parties until a final judgment on the merits can be rendered, see U.S. Philips Corp. v. KBC Bank N.V., 590 F.3d 1091, 1094 (9th Cir. 2010), while the purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held.  See Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers, 415 U.S. 423, 439 (1974).  Requests for temporary restraining orders are governed by the same general legal standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A petitioner seeking a temporary restraining order must establish that (i) he is likely to succeed on the merits, (ii) that he is likely to suffer irreparable harm in the absence of preliminary relief, (iii) that the balance of equities tips in his favor, and (iv) that an injunction is in the public interest.  Winter, 555 U.S. at 20.  Alternatively, the petitioner may demonstrate that the likelihood of success is such that "serious questions going to the merits were raised and that the balance of hardships tips sharply in the plaintiff's favor," so long as the other two elements of the Winter test are met.  Alliance for the Wild

Rockies v. Cottrell, 632 F.3d 1127, 1131–32 (9th Cir. 2011).

**III.     DISCUSSION**

  **A.     Winter Factors and Sliding Scale Test**

  Having been released on bond before the immigration judge reconsidered her bond decision and revoked the bond on January 29, 2020, petitioner seeks narrow relief on the present TRO motion, limited to the question whether he is entitled to a judicial hearing before re-arrest or re-detention by ICE, not the substantive question whether he is subject to mandatory detention.  Because this procedural due process question is not before the BIA on petitioner's bond appeal, the government's prudential exhaustion arguments in opposition to the TRO motion are inapposite.

  Looking to the Winter factors, the court first considers whether petitioner has demonstrated likelihood of success on the merits of his claims.  In the absence of controlling authority recognizing a due process right to a judicial hearing before re-arrest or re-detention by immigration authorities, petitioner fails to show a strong likelihood of success under Winter.  However, under the Ninth Circuit's alternative sliding scale approach, petitioner has certainly raised "serious questions going to the merits" of his procedural due process claim.  Alliance for the Wild Rockies, 632 F.3d at 1131–32.

  The due process issue arising from re-arrest following release on bond in the immigration context is likely to come before the Ninth Circuit on the government's appeal in Ortega v. Bonnar, No. 3:18-cv-03228-WHO, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019), notice of appeal filed, No. 20-15754 (9th Cir. Apr. 22, 2020) (opening brief due Sept. 30, 2020 per Aug. 5, 2020 clerk's order).  In Ortega, the court granted the habeas petition by a lawful permanent resident from El Salvador who had been released on bond from immigration detention and asserted an as-applied due process challenge to the DHS's ability to re-arrest him without a hearing before an IJ to determine whether there had been a material change of circumstance.  In granting the habeas petition, the court in Ortega recognized that "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released."  415 F. Supp. 3d at 968

(citing 8 U.S.C. § 1226(b)).  See also 8 C.F.R. § 236.1(c)(9) ("When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained.").  However, as the court stated in Ortega, the BIA has limited this authority such that, in practice, the DHS re-arrests non-citizens only after a "material" change in circumstances: "'where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance.'"  Id. (quoting Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)).

The court in Ortega also recognized the principle that "'the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.'"  Id. (quoting Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017)).  The court found that Ortega had a protectable liberty interest in remaining out of custody on bond, similar to the liberty interests of people on pre-parole, parole and probation as recognized under Supreme Court authority.  Id. at 969–70 (citing Young v. Harper, 520 U.S. 143, 150 (1997) (pre-parole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (probation); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (parole)).

The government argues that even assuming that petitioner has a liberty interest in continued release on bond, the existing procedures provided to petitioner if re-arrested are constitutionally adequate and no additional process is required.  Opp. at 16–19. When evaluating a procedural due process claim, the court considers the following factors under the Mathews framework: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement

5

1    would entail." Hernandez, 872 F.3d at 993 (quoting Mathews v. Eldridge, 424 U.S. 319,
2    335 (1976)). Applying the Mathews framework to evaluate the procedural due process
3    claim in Ortega, the court found that the relevant factors weighed in favor of a pre-
4    deprivation hearing if ICE decided to re-arrest him after being released on bond. Ortega,
5    415 F. Supp. 3d at 970. Similarly, petitioner here has shown that all three factors under
6    the Mathews framework support a pre-deprivation administrative hearing: (1) a
7    substantial private interest in remaining on bond to continue to provide care and financial
8    support for his family; (2) the high risk of erroneous deprivation given the government's
9    position that re-detention is warranted and the substantial value of the safeguard
10   proposed by petitioner—that is, a pre-deprivation hearing on whether re-detention would
11   be lawful; and (3) the low level of the government's interest in re-arresting petitioner
12   without a hearing before an IJ, where the government's concern that delay in scheduling
13   a hearing could exacerbate flight risk or danger is unsubstantiated in light of petitioner's
14   strong family ties and his continued employment during the pandemic as an essential
15   agricultural worker. Mot. at 24–25.

16   In light of the persuasive reasoning of Ortega, and the ongoing litigation over the
17   procedural due process claim granted by the court there, the court finds that petitioner
18   has raised serious questions on the merits of his claim that he is entitled to a pre-
19   deprivation hearing before an immigration judge if he is re-arrested. Petitioner offers no
20   authority, however, expressly recognizing a due process right in the immigration context
21   to a judicial hearing, rather than an administrative hearing, prior to re-arrest or re-
22   detention, and fails to show that serious questions have been raised as to that part of his
23   due process claim.

24   The government seeks to distinguish Ortega on the ground that it arose in the
25   context of bond revocation pursuant to 8 U.S.C. § 1226(b), which applies to bonds
26   authorized under § 1226(a), rather than bond revocation upon a finding that petitioner is
27   subject to mandatory detention under § 1226(c) as the IJ ruled on reconsideration of her
28   bond decision. The court determines, however, that the procedural due process inquiry

presented in Ortega arising from the re-arrest or re-detention of a non-citizen after release on bond is similar to the procedural due process claim brought by petitioner here, and demonstrates that there are serious questions on the merits of his claim.

Petitioner has also demonstrated that the balance of hardships tips sharply in his favor because absent injunctive relief, petitioner could be taken into ICE custody at any time, subjecting his family to economic hardship and the loss of their caretaker. Petitioner raises a particular concern that he could be arrested when he appears in state court on August 24, 2020.  Mot. at 8.  Petitioner has demonstrated through several affidavits that other non-citizens in his community have been detained without notice in their neighborhoods or when appearing for court hearings.  Dkt. 14-1 (Suppl. Patel Decl.), Exs. A, B, E.  Petitioner has also demonstrated that if he is re-arrested, his $10,000 bond will be automatically revoked and the funds would not be available for several weeks or months to post another bond if a bond is re-granted.  Id. ¶ 7 and Ex. D.  The Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)."  Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017).  Particularly in the midst of the current COVID-19 pandemic, petitioner's history of diabetes complications requiring hospitalization while in ICE custody last year combined with the risk of exposure to COVID-19 in ICE detention support a likelihood of irreparable harm upon re-detention.  By contrast, any impact on respondents would be minimal.  The IJ previously found as a factual matter that petitioner did not pose a risk of danger or flight that could not be mitigated by a sufficient bond.  Under these circumstances, the balance of hardships tips sharply in petitioner's favor, and the Winter factor of likelihood of irreparable harm is satisfied.

As the sliding scale test for injunctive relief also requires consideration of the public interest factor under Winter, the balance of harms and public interest factors merge when the government is the opposing party.  Nken v. Holder, 556 U.S. 418, 435 (2009). Just as the public has an interest in "the orderly and efficient administration of this country's immigration laws," Opp. at 22, the public has a strong interest in upholding

procedural protections against unlawful detention. Petitioner has demonstrated that avoiding collateral hardship to his family, benefiting from his continued employment in essential agricultural services, and reducing his risk of severe medical complications from exposure to COVID-19 in ICE detention would serve the public interest. Further, "the general public's interest in the efficient allocation of the government's fiscal resources" favors granting the TRO. Hernandez, 872 F.3d at 996. The Ninth Circuit has recognized that "[t]he costs to the public of immigration detention are 'staggering.'" Meza v. Bonnar, 2018 WL 2554572, at *4 (N.D. Cal. June 4, 2018) (quoting Hernandez, 872 F.3d at 996). Given the low risk that petitioner would cause harm to others or flee, in light of his strong family ties, financial responsibilities and work commitments, such government expenditure in this case would not greatly serve the interests of the general public.

Under the sliding scale test, petitioner has sufficiently demonstrated serious questions going to the merits and the balance of hardships tipping sharply in his favor, as well as the Winter factors of likelihood of irreparable injury and public interest, to support issuance of a temporary restraining order. Alliance for the Wild Rockies, 632 F.3d at 1135.

**B.     Security**

A temporary restraining order may be issued "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Id. Because respondents have not demonstrated actual prejudice that would result from the TRO, and petitioner has already posted a $10,000 bond before the immigration court, the court finds it appropriate to issue the TRO without requiring security.

8

## IV. CONCLUSION

For the reasons set forth above, the court GRANTS IN PART petitioner's motion for a temporary restraining order for a period of 21 days, through September 14, 2020, to allow sufficient time for the parties to file responses to an order to show cause why a preliminary injunction should not issue, during which time respondents are enjoined from re-detaining petitioner unless and until he is afforded a pre-deprivation administrative hearing on the question of whether his re-detention would ultimately be lawful. Petitioner's TRO motion is DENIED IN PART with respect to his request that re-arrest or re-detention would require a pre-deprivation judicial hearing.

Accordingly, respondents are hereby ORDERED TO SHOW CAUSE why a preliminary injunction should not issue enjoining respondents from re-detaining petitioner as ordered herein. Respondents must file any response to the order to show cause on or before August 31, 2020, and petitioner may file a reply on or before September 7, 2020. The matter will thereafter be decided on the papers.

**IT IS SO ORDERED.**

Dated: August 23, 2020

/s/ *Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge